# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| In re: | ) |
| | )     **CHAPTER 13** |
| **Todd Anthony Webber,** | ) |
| | )     **CASE NO. 15-70705** |
| Debtor. | ) |

## MEMORANDUM OPINION

This matter comes before the Court on the Motion for Authority to Sell Real Estate (the "Sale Motion") filed by the Debtor, Todd Anthony Webber (the "Debtor" or "Movant"), on March 4, 2016 and the respective responses and/or objections of JPMorgan Chase Bank, National Association, Canterbury on the Lake Property Owners Association, LTD (the "POA"), and Branch Banking and Trust Company ("BB&T") filed on March 18, 2016. The property proposed to be sold is Lot 11, Section 2, Canterbury on the Lake Subdivision, in Franklin County, Virginia (the "Property"). A motion to shorten the notice period was also filed with the Sale Motion.

The primary objection to the Sale Motion is that advanced by the POA. The POA contends that the Sale Motion authorized the sale of the Property along with a boat slip and an access easement, both of which are located on property owned by the POA.[1] The POA contends that other parties not before the Court may have an interest in the boat slip, and that the Debtor conveyed the boat slip and easement to himself and his wife while the Debtor was president of the POA and without authority to do so.

An evidentiary hearing was scheduled on the Sale Motion on April 1, 2016. Upon examination of the exhibits and pleadings on file, the Court questioned (i) whether the pending

---

[1] The Property and subdivision are located at Smith Mountain Lake in Franklin County.

matter should be brought forth as an adversary proceeding given that the parties sought a determination of an "interest in property" within the scope of Federal Rule of Bankruptcy Procedure 7001(2), and (ii) whether the Circuit Court of Franklin County, Virginia would be the more appropriate forum to determine the issues before the Court.  On the latter issue, the Court expressed its concern that other parties alleged to have an interest in the boat slip and access easement are not before the Court and the effect of this Court's ruling on the validity of the boat slip conveyance to the Debtor could have a ripple effect on other neighboring slip owners who gained their boat slips and easements at the same time and in the same manner as the Debtor. The Court allowed the parties to present evidence and advance their arguments as to why this Court should decide the issues before it.

For the reasons set forth below, the Court will deny the Sale Motion without prejudice and, pursuant to 28 U.S.C. § 1334(c)(1), abstain from determining the Debtor's rights in the boat slip and access easement to allow litigation to proceed in state court to determine those rights, and potentially the rights of others not before the Court.  Should the state court litigation resolve favorably in favor of the Debtor, the Debtor is free to renew an appropriate sale motion before the Court.

## STATEMENT OF THE CASE

The critical unresolved issue in the Sale Motion is whether the Debtor owns rights in Boat Slip No. 1[2] at Canterbury on the Lake subdivision such that he can convey it along with the lot to the proposed purchaser in that motion.  The numerous deeds and other documents submitted as exhibits appear to reflect a less than pristine paper trail to the Debtor and his then wife, Tracy Lynne Wilson.  The record reflects that the Debtor and Ms. Wilson acquired the

---

[2] For the purposes of this opinion, "Boat Slip No. 1" or the "Boat Slip" shall be deemed to include both the boat slip and the access easement.

2

Property by Deed dated September 29, 1998 (the "Acquisition Deed").  Movant's Exhibit A.  However, the Acquisition Deed makes no reference to a boat slip or to an access easement.  The Acquisition Deed does state it is "subject to all recorded easements, restrictions, reservations, and conditions affecting the property herein conveyed." *Id.*  Fragments of the Canterbury on the Lake subdivision restrictions and covenants (the "Covenants") were introduced as the POA's Exhibit A, and the Covenants recite, among other things, that ". . . the off-waterfront property Owners and the Owners of Lots 10 and 11, Section One, shall have the use of a boathouse site designated on the Lake according to a boathouse plan of the Developer attached hereto and by reference made a part hereof as Exhibit 'E.'"  POA Exhibit A, at 3.  In turn, Exhibit E to the Covenants provides, in part, that "Lots 10 & 11 Section 1 cannot build a boathouse or dock on their lots but may build a boathouse on the Common area like an offwater lot owner."  *Id*. at 5.  The lot in question is one of two lots at the community "boathouse" in the common area of the POA.[3]

      The current owners of Lots 10 and 11 Section One are Richard Lee and Tonya Mower and Roger and Deborah Socha, respectively.  The Sochas are the in-laws of Mr. Mower.  Mr. Mower and Mr. Socha, neither of whom are parties to the present proceeding, were present and testified in support of the POA's objection.  They contend they have rights to a boat slip in the Common area dating back to the original covenants, but have been unable to acquire one.  They acquired their lots in 2005 and why they have taken no action until now to assert those rights is not clear to the Court.[4]  However, they are arguably not the only ones who might have interests in the common area where the Debtor's Boat Slip is located.  The Covenants recite that "the off-

---

[3] The Covenants seem to contemplate the right to build a new boathouse from scratch on the Common area, as opposed to the use of an existing slip at an already constructed boathouse.
[4] Mr. Mower indicated his wife was in dental school at the time they acquired their lot and they wanted to wait until they had the resources to pursue matters. The 11- year lag between the acquisition of their lot and their coming forward at the hearing on the Sale Motion remains puzzling to the Court.

3

water property Owners" also have use rights at the Common area, and it is unclear what, if any, notice those other property owners have of the present proceeding.  In addition, there is a separate deed dated September 12, 2003 to David Eaton, reflecting a conveyance of Boat Slip No. 1 to him.  POA Exhibit C-1.  His chain of title dates back to a deed dated March 25, 1988, and that original deed had an express reference to Boat Slip No. 1 and an access easement.  POA Exhibit C-7.  Adding to the confusion, Mr. Eaton testified at the hearing and stated he believes his slip is actually Boat Slip No. 2, notwithstanding the reference in his deed to Boat Slip No. 1.

The Debtor served as president of the POA for several years.  In December 2004, the Debtor, as president of the POA, executed and delivered several Assignments of Boat Slips to certain property owners at Canterbury on the Lake.  One of those Assignments, for Boat Slip No. 1, was delivered to the Debtor and Ms. Wilson.  POA Exhibit E-1.  The Debtor testified that he paid no additional consideration for the assignment and although he asserts he purchased a boat slip with his property when he acquired it in 1998, he had no documents to substantiate that assertion.

The December 2004 conveyances appear to have had their roots in an American Electric Power ("AEP") boat slip permit to the POA (the "Permit") signed by the Debtor, in his capacity as President of the POA, dated May 3, 2004.  POA Exhibit F.  Testimony reflected the Permit was part of a new shoreline management plan adopted by AEP under its permitting authority on Smith Mountain Lake which allowed for far fewer boat slips on the POA's common area shoreline, despite the Covenants referencing as many as 27 boathouse sites on that property when the covenants were originally recorded in 1988.  After the issuance of the Permit, there was apparently a scramble to claim the available boat slips by the Debtor and others with knowledge of the Permit's new restrictions, including several officers of the POA at that time.  At the

4

evidentiary hearing, the Debtor testified that a letter was sent to all off-water property owners stating that only four boat slips were available following issuance of the Permit. However, the Debtor did not produce any such letter. The current POA president contends that the Debtor did not have the authority to convey the Boat Slip to himself or Ms. Wilson, which has, in turn, potentially called into question the validity of the remaining boat slip assignments as well.[5]

CONCLUSIONS OF LAW

28 U.S.C. § Section 1334(c)(1) authorizes a bankruptcy court, "in the interest of justice, or in the interest of comity with State courts or respect for State law," to "abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334. A bankruptcy court may permissively abstain *sua sponte*. *See In re Gober*, 100 F.3d 1195, 1207 n.10 (5th Cir. 1996) (citations omitted). "[B]ankruptcy courts have considerable discretion to decide whether to abstain under section 1334(c)(1)." *Bricker v. Martin*, 348 B.R. 28, 34 (W.D. Pa. 2006), *aff'd*, 265 F. App'x 141 (3d Cir. 2008) (citations omitted).

Courts, including those in the Fourth Circuit, consider the following twelve-factor test first enunciated in *In re Republic Reader's Service, Inc.,* when determining whether to exercise permissive abstention:

> (1) The effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main

---

[5] Testimony at trial indicated that AEP, through its permitting authority, renumbered the boat slips at Canterbury on the Lake, and that the Debtor's Boat Slip may actually be slip number 2. The Court makes no finding in that regard, as the documents in evidence are inconsistent. The minutes of the POA dated March 5, 2005 refer to a letter issued by AEP reflecting the Debtor has rights in boat slip number 2, but his recorded Assignment of Boat Slip dated December 30, 2004 refers to boat slip number 1. Compare POA Exhibit D-7 with POA Exhibit E-1.

> bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Patterson*, No. 00-31057S, 2000 WL 34532242, at *2, *2 n.1 (Bankr. E.D. Va. Aug. 30, 2000) (citing *In re Becker*, 136 B.R. 113 (D.N.J. 1992); *Republic Reader's Serv, Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987)). "Courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Bricker*, 348 B.R. at 34 (quoting *In re Earned Capital Corp.*, 331 B.R. 208, 221 (Bankr. W.D. Pa. 2005), *aff'd sub nom. Geruschat v. Ernst & Young LLP*, 346 B.R. 123 (W.D. Pa. 2006), *aff'd sub nom. In re Seven Fields Dev. Corp.*, 505 F.3d 237 (3d Cir. 2007)); *see also In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993).

A. <u>The effect or lack thereof on the efficient administration of the estate if a court recommends abstention</u>

The first factor weighs in favor of abstention. The Court recognizes the effect that a delay in deciding the Sale Motion may have on advancing a confirmable Chapter 13 Plan in this case. However, the Court is also well aware of the ramifications of the Debtor closing on a contract conveying property he may not own, and the resulting impact of a potentially significant claim against the Debtor and Ms. Wilson, who is not before the Court.[6] The Court is also mindful of the difference in value of a lot with access to the lake and a lot without access to the lake. These issues are better sorted out in advance in a forum that can capture all potential parties interested in this matter rather than trying to correct a misstep after the fact. Litigation

---

[6] Ms. Wilson is now known as Tracy Lynne Proffitt.

6

over an improper post-petition property conveyance could entangle the parties for an extended -- and costly -- period of time.

    B. <u>The extent to which state law issues predominate over bankruptcy issues</u>

The second factor weighs heavily in favor of abstention. Even though the Sale Motion under Section 363 of the Bankruptcy Code involves application of federal law, the underlying issues involving property rights, contracts, and property owners' association governance are issues of state law that are best resolved by state courts that regularly handle such matters. The Court has long had experience in matters at Smith Mountain Lake, and there can be no dispute that the Franklin County, Virginia Circuit Court, in particular, is knowledgeable about and has extensive experience in resolving title matters at Smith Mountain Lake, including disputes pertaining to access to the lake and to property owners' associations.

    C. <u>The difficulty or unsettled nature of the applicable law</u>

The third factor weighs in favor of abstention. While the application of state law is not necessarily unsettled or difficult here, "[s]tate courts afford the best forum for deciding issues whose resolution turns on interpretation of state law." *Republic Reader's Serv., Inc*., 81 B.R. at 427. The issues in this matter are of the type routinely disposed of by state courts, and when they can be timely addressed in that forum without disruption to administration of the estate, they should be decided in that forum. The Court sees no reason why this matter could not be disposed of by the state court in a reasonable period of time.

    D. <u>The presence of a related proceeding commenced in state court or other non-bankruptcy court</u>

This factor weighs against abstention, but only slightly. There is no underlying state court proceeding at this time.

E. <u>The jurisdictional basis, if any, other than 28 U.S.C. § 1334</u>

The fifth factor weighs in favor of abstention. There is no alleged federal question jurisdiction pursuant to 28 U.S.C. § 1331 over the property ownership dispute. Further, it seems unlikely that diversity jurisdiction under 28 U.S.C. § 1332 would exist since several of the affected and potentially adverse parties are citizens of Virginia, as is the Debtor. Therefore, 28 U.S.C. § 1334 most likely provides the only jurisdictional basis in a federal forum for determining whether the Debtor is able to convey rights in the Boat Slip.

F. <u>The degree of relatedness or remoteness of the proceeding to the main bankruptcy case</u>

The sixth factor weighs against abstention. The resolution of the boat slip ownership dispute is related to the Debtor's main bankruptcy case. Determining whether the Debtor owns the Boat Slip such that he can convey it and pay off significant secured debt is necessary for the advancement of this case.

G. <u>The substance rather than the form of an asserted "core" proceeding</u>

The seventh factor weighs in favor of abstention. "Often a proceeding, cast in the language of a core proceeding, merely shrouds state law actions under the guise of a bankruptcy issue." *Republic Reader's Serv., Inc.*, 81 B.R. at 427. The Sale Motion, although presented as a motion to sell free and clear of liens under 11 U.S.C. § 363, is inextricably intertwined with potential property rights of non-debtor third parties, some unknown to the Court at this time, who have asserted no claims against the estate, and who have not been served with process and have not been provided the opportunity to develop and assert their interests. Asking the Court to approve the Sale Motion under the veneer of a "core" proceeding when such substantial and unresolved issues lurk beneath the surface works to no one's benefit and weighs in favor of abstention.

    H.  <u>The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court</u>

The eighth factor weighs heavily in favor of abstention. The underlying property ownership dispute can be easily severed from the central bankruptcy case to be heard by the appropriate state court. Once the title issues are settled, the Debtor is free to return to this Court and renew his Sale Motion, if appropriate to do so.

    I.  <u>The burden on the bankruptcy court's docket</u>

The ninth factor is largely neutral. If anything, preventing subsequent litigation over an improper or improvident conveyance would weigh in favor of resolving the title issues in advance in the state court.

    J.  <u>The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties</u>

The tenth factor is also largely neutral. Nothing exists in the record to indicate that any of the parties engaged in forum shopping.

    K.  <u>The existence of a right to a jury trial</u>

The eleventh factor weighs in favor of abstention. While no party has yet requested a jury, there may be fact issues yet to be presented that the parties or the state court may want a jury to decide. In that regard, courts have noted that "the *right* to a jury trial is so significant as to be almost dispositive of the question whether to abstain." *Bricker*, 348 B.R. at 37 (citing *Asousa P'ship v. Pinnacle Foods, Inc. (In re Asousa)*, 264 B.R. 376, 396 (Bankr. E.D. Pa. 2001)).

    L.  <u>The presence in the proceeding of nondebtor parties</u>

The twelfth and final factor weighs heavily in favor of abstention. Several nondebtor parties appeared and testified at the evidentiary hearing regarding the assignment process for the

boat slips.  Additionally, resolution of the matter likely will involve other nondebtor parties, yet to be identified, who may claim a right to ownership of or rights to use the Common area and/or the Boat Slip.[7]

　M. Weighing the Twelve Factors

In sum, the vast majority of the factors described above weigh in favor of abstention, including several that weigh heavily in that direction.  Those factors that are neutral or that weigh against abstention do not tip the scale in favor of this Court deciding the issue of ownership or access rights in the Boat Slip.  Thus, the Court will abstain from hearing the matter.

## CONCLUSION

For the foregoing reasons, the Court will dismiss the Sale Motion without prejudice and abstain from determining the Debtor's rights in the Boat Slip.  The parties are directed to resolve this in the appropriate state court.  If, upon resolution in state court, the Debtor deems it appropriate to renew the Sale Motion, he is free to do so in this Court at that time.  A separate Order will be entered contemporaneously herewith.

Decided this 7th day of April, 2016.

_____
UNITED STATES BANKRUPTCY JUDGE

---

[7] This Court is a court of limited jurisdiction.  Abstention will also avoid any potential issues over nondebtor parties not having submitted to the jurisdiction of the Court.