IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **In re:** ) | |
| ) | **CHAPTER 13** |
| **Todd Anthony Webber,** ) | |
| ) | **CASE NO. 15-70705** |
| **Debtor.** ) | |

| | |
|---|---|
| **Todd Anthony Webber,** ) | |
| ) | |
| **Movant,** ) | |
| ) | **Objection to Claim No. 7** |
| v. ) | **(Docket No. 63)** |
| ) | |
| **Tracy Lynne Proffitt,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the Debtor's Objection to Claim No. 7 of Tracy Lynne Proffitt ("Ms. Proffitt") in the amount of $22,112.00 (the "Claim Objection") and Ms. Proffitt's Response thereto.  On April 1, the Court held a hearing on the Claim Objection.  The Debtor; counsel for the Debtor; Ms. Proffitt; counsel for Ms. Proffitt; the Trustee; and Ms. Proffitt's divorce attorney, Stephen M. Maddy, Esquire, appeared at the hearing.  After hearing argument from counsel and testimony from Ms. Proffitt and Mr. Maddy, the Court took the matter under advisement and allowed the parties additional time to file supplemental briefs in support of their positions.  The parties have filed their respective briefs and the matter is ready for decision.  For the reasons set forth below, the Court will sustain the Debtor's Objection to Claim No. 7 and disallow the claim in its entirety.

## STATEMENT OF THE CASE

The Debtor and Ms. Proffitt divorced on November 24, 2014 by the entry of a Final Decree of Divorce A Vinculo Matrimonii in the Circuit Court of Franklin County, Virginia (the "Divorce Decree").[1]  Claim No. 7-1, at 4.  Paragraph 2 of the Divorce Decree provides the following:

> That defendant has further indicated his desire to be awarded the parties' former marital residence located at 165 St. Augustine Road, Wirtz, Virginia 24184, the Court, finding that said property is burdened with debt in excess of its value, does further ADJUDGE, ORDER and DECREE that defendant shall have nine months from the date of the entry of this Order to refinance the current obligation secured by the aforesaid residence and that at the time of such refinance, plaintiff shall convey all of her right, title and interest in and to said property to defendant.  In the event such refinance has not been accomplished, the parties shall list said property with a realtor at a price mutually agreed upon.  In the event that the parties are unable to agree on a price, said price shall be determined by Richard Varney, a certified real estate appraiser, who has been agreed upon by the parties in open court to be an appropriate person to set said evaluation.  In all events, the parties shall, unless otherwise agreed, be required, after said listing, to accept any offer of $225,000 or more once the same is listed for sale.  Defendant shall have the sole and exclusive right to occupy said property and shall further maintain the property and pay all costs associated with his occupancy thereof, including, but not limited to, the mortgage, taxes, insurance and utilities.

*Id.* at 6.  The Divorce Decree continues,

> UPON FURTHER CONSIDERATION WHEREOF, the Court having considered plaintiff's motion for an award of spousal support and finding that while she is in need of such support, that the defendant is totally incapable of paying such support given his income and the outstanding marital and business obligations assumed by him.  Accordingly, the Court having further considered all of the factors set forth in Section 20-107.1 of the 1950 Code of Virginia, does ADJUDGE, ORDER and DECREE that the plaintiff's right to receive support from the defendant is reserved hereby for a period of six (6) years from the date of the entry of this Order.

*Id.* at 7.

---

[1] The Court admitted the Divorce Decree into evidence as stated on the record at the April 1, 2016 hearing.

On May 20, 2015, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code along with the required schedules. Schedule A lists a one-half interest in real property located at 165 Saint Augustine Road, Wirtz, Virginia 24184 (the "Property"), owned as tenants in common.[2] This schedule also lists a valuation of $226,600.00 based on a 2012 Franklin County tax assessment, the most recent assessment to date. Schedule A, Docket No. 1, at 8. On December 22, 2015, the Debtor's bankruptcy case was converted to one under Chapter 13 of the Bankruptcy Code. Docket No. 54. Ms. Proffitt subsequently filed a proof of claim in the amount of $22,112.00, listing a priority unsecured debt due to a domestic support obligation under 11 U.S.C. § 507(a)(1)(A) or (B) in an amount "[t]o be determined by Circuit Court." Claim No. 7-1, at 2-3.

On February 24, 2016, the Debtor filed the Claim Objection, denying liability to Ms. Proffitt for any amount. In the Claim Objection, the Debtor asserts (1) that Ms. Proffitt has based her claim on the Debtor's "failure to obey order of Franklin County Circuit Court/Divorce," but fails to provide any explanation of what alleged violation has taken place; (2) that Ms. Proffitt fails to cite any provision in the Divorce Decree that could be characterized as a "domestic support obligation"; (3) that the Decree explicitly declines to award Ms. Proffitt any spousal support; (4) that although the Decree leaves open the question of an award of spousal support for a 6-year period, the Proof of Claim offers nothing to indicate a subsequent order was issued; and (5) Ms. Proffitt fails to itemize her calculation of $22,112.00.

Ms. Proffitt thereafter filed her Response, asserting (1) that the Court should look beyond the four corners of the Decree; (2) that the obligation to pay a pre-existing marital debt owed to a third party embodied in the Decree is a debt "to a former spouse" that is excepted from discharge

---

[2] The Property was apparently owned by the Debtor and Ms. Proffitt as tenants by the entirety while they were married. Schedule A, Docket No. 1, at 8.

by Section 523(a)(15); (3) that the claim is entitled to priority treatment under Section 507(a)(1)(A) or (B) because the Debtor is not making Note payments yet continues to live in the home for "free"; (4) that the amount of the claim can be calculated by adding all of the Note payments the Debtor failed to tender following entry of the Decree; (5) that even if a property settlement obligation is discharged, the discharge is a change in circumstances warranting an increase in separate alimony obligation; (6) that a bankruptcy court may modify the stay for cause to allow the state court to determine domestic issues, including determining whether the award is nondischargable support under Section 523(a)(5); and (7) that a portion of the claim should be allowed as an administrative claim pursuant to Section 503 for the reasonable rental value of occupying the home.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (I) and (O).

**I.  Definition of a Domestic Support Obligation, Burden of Proof, and the Four-Factor Test For Determining "In the Nature of Alimony, Maintenance, or Support"**

Section 507(a)(1)(A) and (B) of the Bankruptcy Code provides for priority treatment for "domestic support obligations" owed to a former spouse. 11 U.S.C. § 507(a)(1)(A) & (B). Section 101(14A) of the Bankruptcy Code defines "domestic support obligation" as

> a debt that accrues before, on, or after the date of the order for relief in a [bankruptcy case] that is—
>     (A) owed to or recoverable by
>         (i) a . . . former spouse . . . ;

    (B) in the nature of alimony, maintenance, or support . . . without regard to whether such debt is expressly so designated;

    (C) established . . . before, on, or after the date of the order for relief in a [bankruptcy case] by reason of applicable provisions of . . .

      (i) a separation agreement, divorce decree, or property settlement agreement;

      (ii) an order of a court of record; or

      (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit. . . .

11 U.S.C. § 101(14A).

The claimant, as the party seeking priority treatment, has the burden of persuading this Court that her obligation satisfies the requirements of 11 U.S.C. § 101(14A). *See In re Ludwig*, 502 B.R. 466, 468 (Bankr. W.D. Va. 2013) (citing *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004); *In re Austin*, 271 B.R. 97, 105 (Bankr. E.D. Va. 2001)).[3] In determining whether the claimant has satisfied her burden, "the critical question the Court must answer is whether the parties intended the obligation as alimony, support, or maintenance at the time the separation agreement was entered." *Id.* at 468-69 (citing *Tilley v. Jessee*, 789 F.2d 1074, 1078 n.4 (4th Cir. 1986); *In re Monsour*, 372 B.R. 272, 281 (Bankr. W.D. Va. 2007); *In re Austin*, 271 B.R. at 105). If the parties intended the obligation to be a mere division of property, it is not a domestic support obligation. *Id.* at 469. Moreover, where an agreement between the parties does not provide clear evidence of intent, a bankruptcy court must "look[] to extrinsic circumstances to determine the character of the obligation." *In re Yeates*, 807 F.2d 874, 879 (10th Cir. 1986).

The Court considers the following four factors in determining whether an obligation is "in the nature of alimony, maintenance, or support," and thus a "domestic support obligation" to be given priority treatment under the Code: "(1) the language and substance of the agreement;

---

[3] As *Ludwig* also noted, "[a]lthough the passage of the 2005 BAPCPA Amendments altered the structure of 11 U.S.C. § 507(a)(1)(A) and added 11 U.S.C. § 101(14A) to the Bankruptcy Code, the cases interpreting the definition of domestic support obligation all looked at whether the underlying obligation was in the nature of alimony, support, or maintenance. As the 2005 BAPCPA Amendments incorporated this into the definition of domestic support obligation in section 101(14A), these earlier cases are still applicable and relevant today." *Ludwig*, 502 B.R. at 468 n.1.

(2) the relative financial position of the parties when they entered the agreement; (3) the function of the obligation within the agreement; and (4) evidence of overbearing at the time of the agreement." *Id.* (citing *Austin*, 271 B.R. at 106; *Nicolae v. Mirea (In re Mirea)*, No. 11-11266-BFK, 2012 WL 3042239, 2012 Bankr. LEXIS 3391 (Bankr. E.D. Va. July 25, 2012); *Monsour*, 372 B.R. at 281). Because the parties provided no evidence of a separation agreement, the Court must construe the obligations as set forth in the Divorce Decree.

## II. The Divorce Decree Did Not Create a "Domestic Support Obligation"

When applying the four factors to the facts of this case, the Divorce Decree is not "in the nature of alimony, maintenance or support." First, Ms. Proffitt has not satisfied her burden of proving the first factor since the language and substance of the Divorce Decree does not show that the decree was intended to create a support obligation. When considering the first factor, "courts have considered the following criteria: labels; details regarding the payments; the context; and finally, what is left out of the agreement. Specifically, labels are significant, but not dispositive; the method, manner, and recipient of the payments are important; context is illustrative; and what is missing can be as important as what is included." *Id.* (citing *Austin*, 271 B.R. at 106-07). The Divorce Decree specifically provides that the Debtor "shall have the sole and exclusive right to occupy said property and shall further maintain the property and pay all costs associated with his occupancy thereof, including, but not limited to, the mortgage, taxes, insurance and utilities." When read as a whole with the entire Paragraph 2 of the Divorce Decree, it appears this language supports a finding of the division of property, rather than a domestic support obligation under the Code.

In *Ludwig*, a provision of a separation and property settlement agreement, later ratified by and incorporated into a divorce decree, provided for the debtor to be responsible for paying certain joint debts directly to creditors rather than to the debtor's former spouse. *Id.*

6

Additionally, a section labeled "Division of Property" was the longest provision of the Agreement, and throughout the agreement, each benefit was coupled with a corresponding obligation. *Id.* In the instant case, although no labels appear in the Divorce Decree, in each provision where Ms. Proffitt is entitled to a "benefit," the same results in a corresponding detriment to Ms. Proffitt. While Paragraph 2 of the Divorce Decree provides for the Debtor to be awarded the Property, the provision also states that the Property "is burdened with debt in excess of value," and that the parties shall divide equally any losses or gains (including any resulting deficiency balance) as a result of said sale. Moreover, the provision on Page 7 of the Divorce Decree reserving the "*right to* receive support" from the Debtor for a six-year period cannot be construed as conferring a matured and quantifiable domestic support obligation. (Emphasis added.) Thus, the first factor weighs against a finding that the Divorce Decree created a domestic support obligation.

Second, Ms. Proffitt did not provide evidence that the Debtor was in a superior financial position when the Divorce Decree was entered. Notably, both parties were represented by counsel at the time the Divorce Decree was entered. *See* Claim No. 7-1, at 8. Moreover, the Divorce Decree makes it clear that, while Ms. Proffitt was in need of support, the Debtor was "totally incapable of paying [any spousal] support given his income and the outstanding marital and business obligations assumed by him." Claim No. 7-1, at 7. Thus, the second factor weighs against a finding that the Debtor was in a superior financial position than that of Ms. Proffitt, and accordingly, weighs against a finding of a domestic support obligation.

Third, the function of the obligation of the agreement weighs more in favor of a division of property rather than a support obligation. With regard to the function of the obligation within a separation agreement or divorce decree, "courts have generally looked to see if the obligation

7

serves to provide for the common necessities of the other spouse." *Ludwig*, 502 B.R. at 470 (citing *Monsour*, 372 B.R. at 282; *Mirea*, 2012 WL 3042239, at \*7, 2012 Bankr. LEXIS 3391, at \*18).

In *In re Wodark*, cited by Ms. Proffitt in her Response, the divorce decree provided that the wife, who became a debtor, would agree to continue paying a home equity line of credit due to a bank, and when she stopped, the husband began making the payments instead and sought a determination that the wife's obligation to the bank was a nondischargeable debt to him under Section 523(a)(15). *See Wodark v. Wodark (In re Wodark)*, 425 B.R. 834, 836-37 (10th Cir. 2010). The issue before this Court is not one of dischargeability. Rather, distinct from *Wodark*, Ms. Proffitt is seeking priority status for an unpaid obligation due a third party within the scope of Sections 507(a)(1)(A) and (B). The statutory prerequisites are different and *Wodark* provides little support for Ms. Proffitt's position.

*In re Carrigg*, also cited by Ms. Proffitt, can be distinguished as well because the function of the obligation in that case is distinct from the mortgage payment obligation in this case. *See Carrigg v. Carrigg (In re Carrigg)*, 14 B.R. 658, 659-60 (Bankr. D.S.C. 1981). In *Carrigg*, under a separation agreement incorporated into a divorce decree, the debtor was required to make monthly payments by check directly to his ex-wife until her death or remarriage. Although the agreement stated that the payment is a property settlement, not alimony, the bankruptcy court determined that the payment obligation had a "traditional characteristic of support" in that the payments continued until the death or remarriage of the ex-wife, and thus, were found to be in the nature of alimony, maintenance, or support. Unlike *Carrigg*, where payments were to be made directly to the debtor's ex-wife until death or remarriage, in this case, neither a direct payment to Ms. Proffitt is contemplated, nor is the

8

continuing mortgage payment obligation for the benefit of Ms. Proffitt. The mortgage payment obligation in this case does not function "in the nature of alimony, support, or maintenance" as the Court expressly found in *Carrigg*.

*In re Miller* can similarly be distinguished. *See Miller v. Miller (In re Miller)*, 284 B.R. 734, 736-37 (BAP 10th Cir. 2002). In that case, the state court ordered the debtor to pay the first and second mortgages on a marital home, plus direct alimony of $43 per month. When the debtor failed to make the required mortgage payments, the state court ordered the debtor to make the payments directly to the ex-wife. Unlike *Miller*, where the debtor's obligation was intended by the state court to expressly be partial alimony and support for housing costs, the Debtor's mortgage payment obligation here is simply a condition of his own continued occupancy of the Property. Additionally, the Divorce Decree further awarded Ms. Proffitt the parties' separate lake access lot in Franklin County, Virginia, lending support to the view that a property division was contemplated. Support was separately addressed and Ms. Proffitt's right to receive support was expressly reserved for a period of six years, suggesting that if circumstances changed, she could ask the state court to revisit matters. The other cases cited by Ms. Proffitt ruling in favor of a support obligation can be similarly distinguished. The Divorce Decree does not provide for any "common necessities" which would bring the mortgage obligation within the scope of a priority claim.

Finally, Ms. Proffitt presented no evidence of overbearing on the part of the Debtor at the time the Divorce Decree was entered. Both parties were represented by able counsel in its negotiation and entry.

Given all of the factors above, the Court finds the purpose of the Debtor's obligation was not to provide common necessities for Ms. Proffitt, but rather, to provide the parties with an

equitable division of the marital debts and property.  Therefore, the mortgage payments contemplated by the Divorce Decree are not "in the nature of alimony, maintenance, or support," and thus, are not domestic support obligations under the Bankruptcy Code.  Hence, Ms. Proffitt is not entitled to priority treatment under the Code.[4]

## CONCLUSION

For the foregoing reasons, the Court will sustain the Debtor's Objection to Claim No. 7 of Tracy Lynne Proffitt, and Claim No. 7 shall be disallowed.  A separate Order will be entered contemporaneously herewith.

Decided this 2nd day of May, 2016.

_____
UNITED STATES BANKRUPTCY JUDGE

---

[4] As argued in the Chapter 13 Trustee's brief, Ms. Proffitt has not (1) filed a motion for relief from the automatic stay, or (2) filed an application for payment of an administrative expense.  Thus, those issues are not before the Court.  Further, because the Court finds Ms. Proffitt's claim is not entitled to priority, it need not address the lack of explanation as to its calculation.